IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARLENE JONES | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE,[1] | : | |
| Commissioner of Social Security | : | NO. 06-1778 |

## REPORT AND RECOMMENDATION

**L. Felipe Restrepo**                                                              **September 25, 2007**
**United States Magistrate Judge**


        Plaintiff, Darlene Jones, filed this action pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g),

for review of the final decision of the Commissioner of Social Security ("Commissioner"), who

denied plaintiff's applications for disability insurance benefits ("DIB") and supplemental security

income ("SSI") under Title II and Title XVI, respectively, of the Social Security Act ("Act"), 42

U.S.C. §§ 1381-1383f, 401-433.  Presently before the Court are Plaintiff's Motion for Summary

Judgment, or In the Alternative, Plaintiff's Motion for Remand, and Defendant Commissioner's

Response to Plaintiff's Request for Review.  For the reasons which follow, plaintiff's motion

should be denied.


## 1.   PROCEDURAL HISTORY

        In May of 2003, plaintiff filed applications for DIB and SSI alleging disability as of May

5, 2003.  (R. 19, 52-54, 223-226.)  These applications were denied, (R. 37-40, 229-232), and

plaintiff thereafter requested an administrative hearing, (R. 41).

---

[1] Michael J. Astrue became the Commissioner of Social Security effective Feb. 12, 2007.  See Miles v. Astrue, 2007 WL 764037, at n.1 (E.D. Pa. Mar. 9, 2007).  Accordingly, pursuant to Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), he is "automatically substituted" for Jo Anne B. Barnhart as the defendant in this action.

On June 24, 2004, a hearing was held before an Administrative Law Judge ("ALJ"), at which time plaintiff and a vocational expert ("VE") testified. (R. 242-272.) The ALJ issued a decision dated September 24, 2004 finding that plaintiff was not disabled under the Act. (R. 19-30.) On March 3, 2006, the Appeals Council denied plaintiff's request for review, and the ALJ's decision consequently became the final decision of the Commissioner, (R. 8-11). See Sims v. Apfel, 530 U.S. 103, 107 (2000).

Plaintiff subsequently initiated this action, and the parties filed the present motion and response thereto, respectively. In support of her motion, plaintiff alleges the following grounds for relief: (1) the ALJ failed to follow the requirements of Social Security Ruling ("SSR") 00-4p; (2) the ALJ failed to include all of plaintiff's physical and mental limitations in the hypothetical questioning of the VE; (3) the ALJ failed to conduct proper inquiry into the job stresses involved in the jobs identified by the VE; and (4) the ALJ erred by failing to evaluate all of plaintiff's impairments and classify them as severe. See Pl.'s Br. at 3, 6, 9-10. Plaintiff urges the Court to reverse the Commissioner's final decision and order that benefits be awarded, or in the alternative, she requests that the Court remand the matter to the Commissioner for further proceedings. Id. at 13.

Defendant Commissioner argues that substantial evidence supports the Commissioner's final decision. See Def.'s Resp. at 3. Therefore, the Commissioner requests that the Court affirm the denial of benefits to plaintiff. Id. at 25.

## 2.   ALJ'S FINDINGS

The ALJ made the following findings in her September 24, 2004 decision:

> 1.  The claimant met the disability insured status requirements of the Act as of her alleged date of onset of disability, and she has

2

acquired sufficient quarters of coverage to remain insured through the date of this decision.

2.   The claimant has not engaged in substantial gainful activity for the relevant period in question.

3.   The claimant has medically determinable lumbar, knee, hepatitis C, and depression impairments which are severe in nature, and which could reasonably result in the symptoms as alleged.

4.   The claimant's impairments do not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

5.   The claimant's assertions are credible concerning the intensity, persistence and limiting effects of her impairments, but only to the extent to which they are supported by the evidence of record, as summarized in the text of this decision.

6.   The claimant retains the residual functional capacity to perform the functional demands of a restricted range of sedentary level exertional work.  The claimant is unable to perform postural activities with more than occasional regularity, is unable to perform lower extremity pushing and pulling activities, and is unable to perform more than simple, repetitive tasks.

7.   The claimant is incapable of performing her past relevant work.

8.   The claimant is a younger individual, has a limited education, is able to communicate in the English language, and has unskilled and semi-skilled work experience.  In view of the claimant's age and residual functional capacity, the issue of transferability of work skills is not material to this decision.

9.   Based on a physical capacity for the full range of sedentary level exertional work, and the claimant's age, educational background and work experience, Sections 404.1569 and 416.969, and Medical-Vocational Rules 201.24 through 201.26 of Appendix 2, Subpart P, Regulations No. 4, would direct a conclusion that the claimant is not disabled.

10.   Although she is unable to perform the full range of sedentary level extertional work, the claimant is capable of making an adjustment to work which exists in significant numbers in the national and regional economies.  Examples of such occupations include telephone information clerk, systems surveillance monitor, and addressing clerk.  A finding that the claimant is not disabled is therefore reached within the framework of the Medical-Vocational guidelines.

11.   The claimant is not disabled, as that term is defined in the Act and regulations, at any time through the date of this decision.

(R. 29-30.)  Accordingly, the ALJ concluded that plaintiff was not entitled to DIB and not eligible for SSI under the Act.  (R. 30.)

### 3.   STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited, and this Court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards.  See Knepp v. Apfel, 204 F.3d 78, 83 (2000).  Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate."  Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It consists of more than a mere scintilla of evidence but may be less than a preponderance of the evidence.  Burns, 312 F.3d at 118.  Thus, this test is deferential, and the Commissioner's decision will not be disturbed if it is supported by substantial evidence, even if the Court acting de novo might have reached a different conclusion.  See Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); see also Burns, 312 F.3d at 118 ("we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder").

**4.    DISCUSSION**

The Social Security Administration ("SSA") is authorized to pay SSI and DIB under the

Act to persons who have a "disability."  <u>See</u> <u>Barnhart v. Thomas</u>, 540 U.S. 20, 21 (2003).  The

Act defines "disability" in terms of the effect an impairment has on a person's ability to function

in the workplace.  <u>Id.</u> at 21-22.  Specifically, a disability is established where the claimant

demonstrates the "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment . . . which has lasted or can be expected

to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); <u>see</u>

<u>Fargnoli</u>, 247 F.3d at 38-39 (citing <u>Plummer v. Apfel</u>, 186 F.3d 422, 427 (3d Cir. 1999)).

The SSA has promulgated regulations ("the regulations") establishing a five-step

sequential evaluation to determine whether a claimant is disabled.  <u>See</u> <u>Ramirez v. Barnhart</u>, 372

F.3d 546, 550 (3d Cir. 2004); 20 C.F.R. §§ 404.1520, 416.920.  At **step one**, the SSA will find

that a claimant is **not** disabled if she is engaging in "substantial gainful activity."  20 C.F.R. §§

404.1520(b), 416.920(b).  If the claimant is not working at substantial gainful activity, then the

SSA proceeds to **step two** and determines whether the claimant has a "severe impairment."[2]  If

so, the SSA proceeds to **step three** and determines whether the impairment meets or equals an

impairment identified in the Listing of Impairments ("Listings") in the regulations, <u>see</u> 20 C.F.R.

Pt. 404, Subpt. P, App. 1.[3]  <u>See</u> 20 C.F.R. §§ 404.1520(d), 416.920(d).

---

[2] Under the regulations, a claimant has a severe impairment if he or she has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).

[3] If the claimant has an impairment which meets the duration requirement and meets or equals a listed impairment, the SSA will find the claimant disabled without considering her age, education, and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d).  Thus, the SSA presumes the listed impairments are severe enough to render one disabled.  <u>See</u> <u>Ramirez</u>, 372 F.3d at 550.

If the claimant does not have an impairment which meets or equals one of the listings, the inquiry proceeds to **step four**, and the SSA assesses whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work.[4]  Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do her previous work, she will be found to be "not disabled."  Id.  However, if the claimant is unable to perform her past relevant work, the SSA reaches **step five** and has the burden of demonstrating that the claimant "can make an adjustment to other work" that exists in significant numbers in the national economy, considering her RFC together with the vocational factors of age, education, and work experience.  Id. §§ 404.1520(c) and (g), 416.920(c) and (g).  If the claimant cannot make an adjustment to other work, the SSA will find the claimant disabled at step five.  Id. §§ 404.1520(g), 416.920(g); see Thomas, 540 U.S. at 24-25; Ramirez, 372 F.3d at 551.

In the present case, after reviewing the evidence in the record, the ALJ applied the sequential analysis and reached step five, finding that while plaintiff "is incapable of performing her past relevant work . . . [she] is capable of making an adjustment to work which exists in significant numbers in the national and regional economies."  (R. 29-30.)  Accordingly, the ALJ found that plaintiff "is not disabled, as that term is defined in the [Act] and the regulations, at any time through the date of this decision."  (R. 30.)

> ### (A)   The ALJ did not err by failing to rule that reduced bilateral grip strength, possible left-sided carpal tunnel syndrome, and obesity were severe impairments

Plaintiff alleges that the ALJ erred in failing to find her obesity, reduced grip strength, and possible left-sided carpal tunnel syndrome as severe impairments.  Pl.'s Br. at 10.  An

---

[4]Under the regulations, RFC is defined as "what [a claimant] can still do despite [the claimant's] limitations."  20 C.F.R. §§404.1545(a), 416.945(a); see Ramirez, 373 F.3d at 551 n.1.

impairment is considered severe if it "significantly limits [the individual's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs." Woodson, 2004 WL 1102363, at *6 (quoting 20 C.F.R. § 416.921(b)).  Here, while the ALJ found that plaintiff "ha[d] medically determinable lumbar, knee, hepatitis C, and depression impairments which [were] severe in nature," (R. 29, Finding No. 3), the ALJ did not find any other impairments "severe," under the Act.

Although plaintiff did not allege obesity as an impairment or limitation before the ALJ, plaintiff points to various notations of her height and weight in the record that show she fell within the obese range.  Pl.'s Br. at 12.   Plaintiff argues that SSR 02-1p obligated the ALJ to discuss plaintiff's obesity and that the ALJ's failure to mention it represents a reversible error of law.  Pl.'s Br. at 12-13.  Although SSR 02-1p requires that a claimant's obesity be accounted for, the ALJ was not required to explicitly discuss plaintiff's obesity or classify it as a severe impairment in this case.  See Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).

The Third Circuit Court of Appeals stated in Rutherford that, "although the ALJ did not explicitly consider [plaintiff's] obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions."  Id. at 553 (quoting Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004)).  Here, as in Rutherford, the ALJ relied on the medical evidence as a basis for her findings regarding plaintiff's limitations, and in that "[plaintiff's] doctors must also be viewed as aware" of her obesity, the ALJ's reliance on the medical opinions of record "constitutes a satisfactory . . . consideration of that condition."  See id.  While plaintiff's weight or obesity is noted in the medical evidence, (R. 104, 108, 115, 138-46, 171-173, 193-95, 197, 199), neither plaintiff's physicians, the consultative examination report, nor the State examiner's assessment

mentions obesity as contributing to any impairment, (R. 92-113, 135-173, 193-222).

Furthermore, plaintiff did not identify any functional limitation related to her obesity in her

application, during her consultative examination, or at the hearing before the ALJ.  (R. 60-91,

103-105, 244-271.)  Under Rutherford, a remand is not warranted in this regard as it would not

affect the outcome of this case.  See Rutherford, 399 F.3d at 553.

The ALJ also did not err by failing to rule that reduced bilateral grip strength and

possible left-sided carpal tunnel syndrome were severe impairments.  The only medical evidence

of these impairments plaintiff points to is contained in Dr. Harvey Azarva's report following a

physical consultative examination of plaintiff on August 20, 2003.  (R. 103-105.)  The doctor

noted that plaintiff complained of "generalized intermittent weakness of her hands, more so on

the left," that she occasionally drops items, but that she has no difficulty dressing herself and is

primarily right-handed.  (R. 103.)  He observed that plaintiff exhibited grip strength of 4/5 on the

left and 4+/5 on the right and had "**possible** positive Tinel's sign only on the left side." (R. 105

(emphasis added).)  Dr. Azarva's impression was that plaintiff had "**possible** left-sided carpal

tunnel syndrome with **no evidence of atrophy**, albeit with the presence of diminished grip."  (R.

105 (emphasis added).)  In this same report, Dr. Azarva observed that plaintiff climbed on and

off the examining table without difficulty, and her "**ability to** . . . **lift and grasp were all

intact**." (R. 104-05 (emphasis added).)

The medical evidence from plaintiff's treating physicians contains no mention of plaintiff

being diagnosed with or receiving treatment for hand or wrist problems of any kind.  (R. 135-

173, 193-222.)  The record provides no evidence that plaintiff received any further diagnostic

testing for left-sided carpal tunnel syndrome or that she was actually diagnosed with that

impairment.

The ALJ properly considered, discussed and weighed the relevant evidence.  See Fargnoli, 247 F.3d at 42.  While acknowledging plaintiff's claims that she could only lift 5 to 10 pounds, and that her hands sometimes fell asleep and gave out on her, (R. 24), the ALJ did not find plaintiff's subjective complaints fully credible, (R. 26).  The ALJ discredited plaintiff's complaints based on the inconsistency between plaintiff's testimony that she could lift only 5 to 10 pounds and her earlier statements that she could lift 15-20 pounds and that she had no problems doing household tasks such as vacuuming.  (R. 24.)  The ALJ specifically pointed out that Dr. Azarva noted that plaintiff could climb on and off the examination table without difficulty, and exhibited intact lifting functionality.  (R. 25.)  The ALJ also explained that medical sources failed to note significant signs of "neurological deficits, diminished ranges of motion, muscle atrophy or weakness, motor disruption, or sensory or reflex abnormalities **to the degree as alleged by the claimant**," and further that the "medical record reveals no notable evidence of physical compromise which would affect the claimant's ability to lift [or] carry" to the degree alleged.  (R. 26 (emphasis added).)

In that substantial evidence indicates that plaintiff's slightly diminished grip strength or possible carpal tunnel syndrome had "no more than a minimal effect" on plaintiff's ability to perform basic work activities, see Woodson v. Barnhart, 2004 WL 1102363, at *6 (E.D. Pa. May 11, 2004), the ALJ did not err in failing to find that these impairments "significantly limit[ed]" plaintiff's physical ability to do basic work activities.  Therefore, the ALJ's failure to find plaintiff's reduced bilateral grip strength and possible carpal tunnel syndrome to be severe impairments is supported by substantial evidence.

**(B)   There was no conflict between the VE's testimony and information contained in the DOT**

Plaintiff also argues that the ALJ failed to follow the requirements of SSR 00-4p because she did not ask the VE about an alleged apparent conflict between the VE's testimony and information contained in the Dictionary of Occupational Titles ("DOT").  See Pl.'s Br. at 3-4. Specifically, plaintiff argues that the DOT indicates that an individual with plaintiff's restrictions does not possess the reasoning ability required to perform the jobs identified by the VE which the ALJ ultimately found plaintiff could perform.  See id. at 4-6.

SSR 00-4p, 2000 WL 1898704 at *1 (2000), "emphasizes that before relying on VE . . . evidence to support a disability determination or decision, the adjudicators must" (1) identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs and information in the DOT and (2) "[e]xplain in the determination or decision how any conflict that has been identified was resolved."  By its literal terms, SSR 00-4p applies only to VE testimony constituting "evidence about the requirements of a job or occupation," not to VE testimony that simply identifies a list of jobs.  Rutherford, 399 F.3d at 557 (quoting SSR 00-4p). Nevertheless, SSR 00-4p is "exemplary, rather than exhaustive," as the ALJ must reconcile inconsistencies between VE testimony and DOT information in fulfilling the obligation to develop the record fully.  Id.

In response to the ALJ's hypothetical which included the restrictions identified in the ALJ's RFC determination limiting plaintiff to "**simple, repetitive tasks,**" (R. 266-67 (emphasis added); see R. 29, Finding No. 6), the VE listed telephone information clerk, surveillance system monitor, and addressing clerk as jobs which an individual with plaintiff's impairments could

perform, (R. 267-68).  The VE testified that these were unskilled sedentary jobs at SVP level 2.[5]

(R. 267-68.)  The DOT describes two of these jobs - telephone information clerk and

surveillance system monitor - at level 3 reasoning, requiring an ability to "[a]pply commonsense

understanding to carry out instructions furnished in written, oral, or diagrammatic form."  DOT

§§ 237.367-046, 379.367-010.  The description of addressing clerk indicates level 2 reasoning,

requiring the ability to "[a]pply commonsense understanding to carryout detailed but uninvolved

written or oral instructions."  Id. § 209.587-010.  Plaintiff contends that reasoning levels 2 and 3

exceed her restriction to "simple, repetitive tasks," and that this restriction means she is only able

to perform jobs that require level 1 reasoning.  See Pl.'s Br. at 5-6.  Level 1 reasoning is defined

as the ability to "[a]pply commonsense understanding to carry out simple one- or two-step

instructions."  DOT, App. C.

        The Third Circuit Court of Appeals found in Money v. Barnhart, 910 Fed. Appx. 210 (3d

Cir. 2004) (non-precedential), that "[w]orking at **reasoning level 2** would ***not* contradict** the

mandate that [plaintiff's] work be **simple, routine, and repetitive**."  Id. at 215.  While Money is

non-precedential, it provides valuable guidance, and other courts have similarly found there is **no**

**conflict** between **reasoning level 2** and an RFC limitation to **simple, repetitive or routine**

**tasks**.  See, e.g., Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (finding "level-two

reasoning appears more consistent with Plaintiff's RFC" limiting her to "simple and routine work

tasks"); Meissl v. Barnhart, 403 F. Supp. 2d 981, 983-85 (C.D. Cal. 2005) (citing Money)

(finding level 2 reasoning consistent with plaintiff's RFC limiting her to "simple, repetitive

mental tasks"); Flaherty v. Halter, 182 F. Supp. 2d. 824, 850 (D. Minn. 2001) ("DOT's level two

---

[5] Specific Vocational Preparation ("SVP") refers to the amount of time required by a typical
worker to learn how to perform a specific job.  See DOT, App. C.  For the jobs identified by the
VE as having an SVP level 2, this requires "[a]nything beyond short demonstration up to and
including 1 month."  See id. §§ 237.367-046, 379.367-010, 209.587-010.

reasoning requirement did not conflict with the ALJ's prescribed limitation" to "simple, routine, repetitive, concrete, tangible tasks").

Since there was no apparent inconsistency between the limitations included in the ALJ's RFC determinations and the level two reasoning ability required of the addresser job identified by the VE, the VE's testimony provided substantial evidence for the ALJ's finding that plaintiff was capable of performing that job, even if the level 3 reasoning required of the other two jobs identified by the VE were beyond plaintiff's ability.  Therefore, this claim does not warrant a remand.  See Rutherford, 399 F.3d at 558 (holding that the VE's testimony provided substantial evidence despite "minor inconsistencies" with DOT information for some, **but not _all_**, jobs identified by the VE); see also Kathi Hurse v. Barnhart, No. 05-5483, Report and Recommendation at 8-11 (E.D. Pa. Mar. 15, 2006) (since level 2 reasoning is consistent with simple, routine work, remand was not necessary since "[i]nconsistencies did not exist as to **all** of the jobs the [VE] recommended") (citing Rutherford), approved and adopted, Order filed 5/22/06 (Padova, J.).


> **(C)    The hypothetical posed to the VE properly reflected plaintiff's limitations**

Plaintiff argues that the ALJ's hypothetical posed to the VE was deficient because it did not convey all of plaintiff's physical and mental limitations.   Specifically, plaintiff contends the hypothetical should have included limitations for (1) possible carpal tunnel syndrome and diminished bilateral grip strength, (2) a sit-stand option, and (3) mental limitations in addition to the restriction for "simple, routine tasks."  Pl.'s Br. at 6-8.

It is well established that "a hypothetical question posed to a vocational expert must reflect **all** of a claimant's impairments."  Rutherford, 399 F.3d at 554 (quoting Burns, 312 F.3d at

123).  In particular, "the ALJ must accurately convey to the vocational expert all of a claimant's **credibly established limitations**." Id. (emphasis added).  Thus, this reference to **all** impairments, which must be included in an ALJ's hypothetical, encompasses only those that are medically established.  Id.  Where limitations are medically supported, but are also contradicted by other evidence in the record, the ALJ determines the relative credibility of the evidence, and "can choose to credit portions of the existing evidence but 'cannot reject evidence for no reason or for the wrong reason.'"  Rutherford, 399 F.3d at 554 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993)).

To support her contention, plaintiff points to Dr. Azarva's finding that plaintiff had reduced grip strength of 4/5 on the left and 4+/5 on the right, possible positive Tinel's sign on the left, and possible left-sided carpal tunnel.  Pl.'s Br. at 6-7.  Plaintiff posits that these findings show that she would have difficulty with manipulative functions such as reaching, handling, and fingering, therefore, it was necessary for this information to be included in the hypothetical because two of the jobs identified by the VE, addresser and telephone quotation clerk, require frequent reaching, handling, and fingering.  Pl.'s Br. at 7.  As discussed previously, the ALJ properly did not find that possible carpal tunnel syndrome and bilateral reduced grip strength were severe impairments.  Yet, the hypothetical posed to the VE must convey all of plaintiff's credibly established limitations, even those that are not deemed severe.  See 20 C.F.R. §§ 416.945(a)(2), 404.1545(a)(2); SSR 96-8p, 1996 WL 374184 *5 (1996); Rutherford, 399 F.3d at 554 n.7.

The ALJ properly considered and weighed the credibility of the relevant evidence in not finding that plaintiff's slightly diminished grip strength and **possible** left-sided carpal tunnel syndrome contributed to any additional limitation.  See Rutherford, 399 F. 3d at 554.  The ALJ

13

considered plaintiff's complaint's that her hands sometimes fell asleep and gave out on her.  (R. 24.)  As discussed above, the ALJ properly discredited plaintiff's complaints, specifically pointing to evidence in the record that contradicted the degree to which plaintiff alleged she was limited.  Specifically, among other things, the ALJ noted the inconsistency of plaintiff's testimony that she could lift only 5-10 pounds with another statement that she could lift up to 15-20 pounds.  (R. 24, 77, 259.)  The ALJ also discredited plaintiff's allegations by citing Dr. Azarva's finding that her lifting functionality was intact, and noting that medical sources failed to note signs of "neurological deficits, diminished ranges of motion, muscle atrophy or weakness, motor disruption, or sensory or reflex abnormalities to the degree as alleged by the claimant."  (R. 26.)

Furthermore, plaintiff does not point to any evidence that her complaints regarding her hands caused any manipulative limitations such as reaching, handling, or fingering.  Dr. Mary Ryczak, the State medical consultant, completed a physical residual functional capacity assessment where she limited plaintiff to occasionally lifting 20 pounds and frequently lifting 10 pounds, citing Dr. Azarva's report of plaintiff's weakness particularly in the left hand and her grip strength of 4+/5 on the right and 4/5 on the left.  (R. 107-08.)  However, Dr. Ryczak also concluded that no manipulative limitations were established, including reaching, handling, and fingering.  (R. 109.)

The medical record does not credibly establish any manipulative limitations, and the ALJ properly discredited plaintiff's subjective complaints which provide the only basis for the allegation that plaintiff cannot lift the 10 pounds maximum required of sedentary work.[6]

---

[6] Sedentary work is defined as requiring "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. §§ 404.1567(a), 416.967(a).

14

Therefore, the RFC determination restricting plaintiff to sedentary work encompasses any limitation plaintiff may have had from her diminished grip strength or possible left-sided carpal tunnel syndrome.  See Goodwin v. Barnhart, 2005 WL 1683538 at *12 (S.D.N.Y. July 18, 2005) (finding that "slightly reduced grip strength" of 4/5 in plaintiff's left hand would not interfere with ability to perform sedentary work supported by substantial evidence).  As such, the hypothetical posed to the VE limiting her to sedentary work accurately conveyed the extent of her limitations and properly excluded additional manipulative limitations or greater lifting restrictions.  See Plummer, 186 F.3d at 431 (VE response to hypothetical that fairly sets forth every credible limitation established by the physical evidence can be relied upon as substantial evidence).

The hypothetical posed to the VE also properly excluded mention of a limitation requiring a sit-stand option.  Plaintiff did not previously allege the need for a sit-stand option, and now argues that the evidence of degenerative disc disease, bulging discs and sacralization of the L5 vertebral segment, along with her complaints in her application that she can sit for half an hour before her back begins to hurt demonstrates the need for a sit-stand option.  Pl.'s Br. at 7.

There is no medical opinion in the record suggesting that plaintiff requires a sit-stand option, or that plaintiff is incapable of mainly sitting throughout the day as required by sedentary work.[7]  The ALJ considered objective diagnostic testing revealing plaintiff has lumbar disc bulging and desiccation, described as "mild" in severity and without "significant facet arthritis or canal stenosis."  (R. 25.)  The ALJ also relied on Dr. Azarva's reports that plaintiff exhibited intact standing, sitting, walking and bending functionality, that plaintiff reported "that motrin

---

[7] Sedentary work involves sitting and occasional walking and standing.  See 20 C.F.R. §§ 404.1567(a), 415.967(a).

takes the pain away," and that the medical record indicates her treatment has been conservative, consisting solely of prescribed medications.  (R. 25.)

The ALJ found plaintiff's subjective complaints not fully credible, specifically noting that the medical record revealed no notable evidence of physical compromise that would affect her ability to stand or walk to the degree as alleged, and that there is "no evidence of record to support a finding of a medically necessitated need for [plaintiff] to lie down throughout the day as alleged." (R. 26.)  The ALJ considered all the evidence in the record and properly discredited plaintiff's subjective complaints regarding the severity of her back pain.  Furthermore, in Rutherford, plaintiff made essentially the same argument as plaintiff raises here, but the Court of Appeals held that the plaintiff's "assertion as to the sit-stand option fails in those terms because she never claimed the need for that option as a symptom of her back pain."  Rutherford, 399 F.3d at 556.  Likewise, plaintiff's argument here fails in that, among other things, she never claimed the need for a sit-stand option due to her back pain.

Plaintiff also argues that the mental limitations restricting plaintiff to no more than "simple, repetitive tasks," in the hypothetical posed to the VE did not sufficiently convey her limitations related to her depression.  Pl.'s Br. at 7.  Since the hypothetical mirrored the ALJ's RFC assessment, plaintiff's argument is best understood as a challenge to the RFC assessment itself.  See Rutherford, 399 F.3d at 554 n.8.  Plaintiff relies on Dr. Taras' consultative examination assessment that plaintiff would have moderate limitations in understanding and remembering detailed instructions, judgment, interacting appropriately with the public, supervisor's, and co-workers, responding appropriately to changes in routine work settings, and marked limitation in responding to work pressures in a usual work setting. Pl.'s Br. at 8.  Plaintiff also points out that Dr. Taras found plaintiff to have poor memory and assessed a GAF score of

16

45.  Id.  She argues that Dr. Taras' findings and the diagnosis of major depression from her treating psychiatric records demonstrate that she has more than slight limitations in judgement, responding appropriately to co-workers and supervision, work structure, and dealing with changes in a routine work setting.  Id. at 8-9.  Thus, plaintiff contends that limitations in this area should have been included in the hypothetical.  Id.

The ALJ must consider and evaluate the medical evidence in the record while determining a claimant's RFC, but the ALJ is not expected "to make reference to every relevant treatment note in a case."  Fargnoli, 247 F.3d at 42.  Here, after considering and evaluating the medical evidence in the record related to plaintiff's mental impairment, the ALJ concluded that plaintiff had a mild degree of limitation in activities of daily living functioning, a mild degree of limitation in social functioning, a moderate degree of limitation in the concentration, persistence and pace area of functioning, and no episodes of decompensation.  (R. 27.)  The ALJ then assessed plaintiff as having the mental RFC to perform no more than "simple, repetitive tasks." (R. 27.)

The ALJ gave Dr. Taras' assessment "limited weight," finding it inconsistent with other evidence in the record.  (R. 26-27.)  The ALJ considered that Dr. Taras noted plaintiff exhibited tense motor behavior, "mildly" pressured speech, tearfulness, poor short term memory, and diminished ability to maintain attention and concentration.  (R. 25.)  However, the ALJ also pointed to Dr. Taras' observations at the same examination that plaintiff was "cooperative, articulate, coherent . . . sustained conversation," and **was able to perform 1-2 step actions**.  (R. 25.)  In addition, the ALJ found Dr. Taras' assessment inconsistent with other evidence in the record, including treating sources that noted plaintiff was "cooperative, displays normal speech, exhibits intact cognition and thought processes" despite signs of depressed mood and affect, and

plaintiff's testimony that Zoloft helped her depression and her described activities of daily living. (R. 25.)  The ALJ found the GAF score of 45 assessed by Dr. Taras inconsistent with a later GAF score of 60 from a **treating source**.  (R. 25.)  Furthermore, in support of the ALJ's finding that plaintiff had only a mild degree of limitation in social functioning, and had good ability to respond appropriately to supervision and co-workers, Dr. Taras noted that plaintiff reported "get[ting] along well with her employers," and having "no difficulty getting along with people." (R. 115.)

The ALJ found Dr. Taras' assessment credible that despite plaintiff's poor short term memory, she had no limitation in performing 1-2 step tasks, and the evidence supported a finding that plaintiff retained the functional ability to perform simple tasks despite her depressive symptoms.  (R. 25, 27.)  The ALJ's RFC determination that plaintiff could perform simple repetitive tasks incorporates plaintiff's limitations that were found credibly established, and the ALJ properly weighed the evidence in this regard, providing explanations for evidence she rejected.  See Fargnoli, 247 F.3d at 43; see also Rutherford, 399 F.3d at 554.  Substantial evidence supports the ALJ's determination that plaintiff does not suffer from specific limitations that are not accounted for in the restriction to simple, repetitive tasks.  Since the ALJ's RFC finding is supported by substantial evidence and the hypothetical question posed to the VE accurately reflected the RFC, there was no error in relying on the VE's testimony.  See, e.g., Rutherford, 399 F.3d at 555.[8]

---

[8]As in Santiago-Rivera v. Barnhart, 2006 WL 2794189 (E.D. Pa. Sept. 26, 2006), "[t]his is not a case where the objective medical evidence of record bespeaks the need for the ALJ to query the VE as to additional, more specific deficiencies." Id. at *12 (distinguishing Rutherford and finding hypothetical limiting plaintiff to "simple, routine tasks" sufficient).

**(D)     The ALJ did not fail to conduct a proper inquiry into the stresses involved in the jobs identified by the VE**

Plaintiff contends that the ALJ failed to properly consider plaintiff's ability to deal with stress.  See Pl.'s Br. at 9.  She presents two arguments in support of this contention: (1) the ALJ failed to undertake an individualized inquiry into what job attributes are likely to produce disabling stress in the plaintiff, and (2) the ALJ failed to elicit VE testimony regarding these particular stress-inducing conditions.  Id.

### *1.  Plaintiff's ability to deal with stress was properly considered in the RFC*

Plaintiff relies on SSR 85-15 for her first proposition that the ALJ was obligated to conduct an individualized inquiry into job conditions likely to cause the plaintiff disabling stress.  See Pl.'s Br. at 9-10.  SSR 85-15 recognizes that persons with mental impairments react to job stress in individualized ways.  See SSR 85-15, 1985 WL 56857, at *5-6 (1985). Therefore, SSR 85-15 provides that "[a]ny impairment-related limitations created by an individual's response to [stress] . . . must be reflected in the RFC assessment."  Id. at *6.  The purpose of SSR 85-15 is to emphasize:

> (1) that the potential job base for mentally ill claimants without adverse vocational factors is not necessarily large even for individuals who have no other impairments, unless their remaining mental capacities are sufficient to meet the intellectual and emotional demands of at least unskilled, competitive, remunerative work on a sustained basis; and (2) that a finding of disability can be appropriate for an individual who has a severe mental impairment which does not meet or equal the Listing of Impairments, even where he or she does not have adversities in age, education, or work experience.

Id. at *1.  Thus, SSR 85-15 requires the ALJ to give "due consideration to plaintiff's ability to deal with stress in assessing plaintiff's residual functional capacity to perform work."  Diehl v. Barnhart, 357 F. Supp. 2d 804, 825-26 (E.D. Pa. 2005).

Plaintiff argues that an inquiry into the impact of particular job stressors was necessary to determine whether she was capable of performing even "low stress" jobs.  See Pl.'s Br. at 10.  Essentially, her argument is that the ALJ failed to consider plaintiff's susceptibility to job stress in the RFC assessment.  However, in this case the ALJ fulfilled her obligation to consider plaintiff's ability to handle stress in assessing plaintiff's RFC to perform work.

In support of her argument, plaintiff points only to Dr. Debra Taras' consultative examination assessment that plaintiff had a marked limitation with regard to responding appropriately to work pressures in a usual work setting, (R. 119).  See Pl.'s Br. at 9.  Dr. Taras cited plaintiff's depression and frequent tearfulness to support this marked limitation and the moderate limitations she assessed for the remaining categories of work-related restrictions.  (R. 119.)  Dr. Linda Mascetti, the State agency consultant, noted that Dr. Taras' statement that plaintiff has a marked limitation in this area is neither supported by Dr. Taras' psychiatric evaluation nor by other data in the file.  (R. 133.)  The other mention of stress in the record is Dr. Taras' assessment of plaintiff's functioning where she opined that plaintiff would be moderately impaired in adaptation to stressful circumstances, and that "at present, [plaintiff] was overwhelmed and she would find it very difficult to cope with any additional stress."  (R. 115-16.)

Although the ALJ gave greater weight to Dr. Taras' opinion regarding plaintiff's mental limitations than to Dr. Mascetti, the ALJ described the weight given to Dr. Taras' report as "limited," pointing to other inconsistent evidence in the record.  (R. 26-27.)  As discussed in the

previous section, the ALJ found Dr. Taras' assessment internally inconsistent with her observations that plaintiff was "cooperative, maintained eye contact, sustained conversation, was articulate and coherent" and her appraisal that plaintiff possessed the functional ability to do one- and two-step procedures, a GAF assessment of as high as 60 from a later treating source, plaintiff's reported activities of daily living, and the conservative nature of plaintiff's treatment regimen.  Id.

Plaintiff's treating psychiatric and mental health records contain no mention of stress, (R. 174-92), and the ALJ points out that no treating source has offered an opinion concerning plaintiff's specific mental functional limitations, (R. 26).  The ALJ also summarized that "treating medical sources have failed to document specific claimant actions or medical events indicating or suggesting marked or extreme psychological restrictions concerning the claimant's ability to perform activities of daily living, to sustain social functioning, or to maintain concentration or focus of attention. . . ."  (R. 26.)  Furthermore, plaintiff did not allege in her application or at the administrative hearing that she was having difficulty with stress or that she found certain activities or situations stressful.  (R. 60-91, 244-71.)

In reaching the conclusion on the severity of plaintiff's mental limitations, the ALJ focused on Dr. Taras' appraisal that plaintiff could perform functional activities involving one- to two-step tasks, reflected in the ALJ's assessment that plaintiff retained the residual functional capacity to perform simple, repetitive tasks.  (R. 27)  The ALJ also relied on the evidence from treating sources indicating that while plaintiff was depressed, she was "cooperative, displayed normal speech, and exhibits intact cognition and thought processes."  (R. 25.)  Plaintiff's reports that Zoloft helped alleviate her depression and that she was able to get along with her physicians were also considered by the ALJ.  (R. 25.)  Since the ALJ properly explained the reasons for

giving "greater but limited weight" to Dr. Taras' assessment based on its inconsistency with the other evidence contained in the record, the RFC finding properly accounted for plaintiff's ability to handle stress. See Diehl, 357 F. Supp. 2d at 826 (finding the plaintiff's ability to deal with stress was properly accounted for in the RFC determination where the ALJ focused on evidence demonstrating that the plaintiff had good ability to make adjustments rather than a medical opinion that plaintiff had only a "fair" ability to deal with stress).

### 2.   The ALJ was not obligated to elicit VE testimony directed specifically to particular conditions likely to cause plaintiff stress

Plaintiff next argues that the ALJ erred by failing to elicit VE testimony regarding particular job conditions that would cause plaintiff disabling stress. Pl.'s Br. at 9. A hypothetical question posed to a VE must accurately reflect a claimant's credibly established impairments. Rutherford, 399 F.3d at 554. Where limitations are medically supported, but are also contradicted by other evidence in the record, the ALJ weighs the credibility of the evidence. See id.

Here, the record does not contain medically undisputed evidence that plaintiff suffers from impairment-related limitations caused by stress. The record shows inconsistencies between Dr. Taras' assessment of plaintiff's ability to respond appropriately to work pressures and other medical evidence in the record, including other portions of Dr. Taras' assessment, plaintiff's treatment records, and the opinion of Dr. Mascetti. The ALJ properly provided reasons supported by the record for her determination to give "limited weight" to Dr. Taras' assessment. See id. Therefore, the ALJ's omission of impairment-related limitations caused by stress in the hypothetical question posed to the VE was not error. See Diehl, 357 F. Supp. 2d at 826 (finding

no error in excluding mention of stress limitation in hypothetical to VE where the VE properly discounted inconsistent medical evidence regarding plaintiff's ability to deal with stress).

### 5.   CONCLUSION

Under the fourth sentence of 42 U.S.C. § 405(g): "The [district] court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) ("Judicial review"); see Matthews, 239 F.3d at 593.  Here, since the ALJ's findings are supported by substantial evidence and decided according to correct legal standards, her decision should be upheld.  See Fargnoli, 247 F.3d at 38.

Accordingly, Plaintiff's Motion for Summary Judgment, or In the Alternative, Plaintiff's Motion for Remand, should be denied.  Under § 405(g), the final decision of the Commissioner denying benefits should be affirmed, and a judgment to that effect should be formally set forth "on a separate document," pursuant to Federal Rule of Civil Procedure 58.  See Kadelski v. Sullivan, 30 F.3d 399, 402 (3d Cir. 1994); see also Shalala v. Schaefer, 113 S. Ct. 2625, 2629 (1993).

My Recommendation follows.

## R E C O M M E N D A T I O N

**AND NOW,** this 25th day of September, 2007, upon consideration of Plaintiff's Motion for Summary Judgment, or In the Alternative, Plaintiff's Motion for Remand, and Defendant Commissioner's Response to Plaintiff's Request for Review, for the reasons given in the accompanying Report, it is **RECOMMENDED** that plaintiff's motion be **DENIED**.  A Judgment **AFFIRMING** the Commissioner's final decision should therefore be entered.

/s/ L. Felipe Restrepo
L. FELIPE RESTREPO
UNITED STATES MAGISTRATE JUDGE